In the Matter of the NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against ROOSEVELT CHEVROLET Co., INC., Respondent.

In the Matter of ROOSEVELT CHEVROLET Co., INC., Petitioner, against NEW YORK STATE LABOR RELATIONS BOARD, Respondent.

Supreme Court, Special Term, Queens County, September 19, 1941.

*Daniel Kornblum* [*Daniel Kornblum* and *Edward H. Lyman* of counsel], for the New York State Labor Relations Board.

*Putney, Twombley & Hall* [*Frederic R. Sanborn* and *Louis H. Hall, Jr.*, of counsel], for the Roosevelt Chevrolet Co., Inc.

HALLINAN, J. The New York State Labor Relations Board instituted this proceeding to enforce its order dated December 11, 1940. The respondent Roosevelt Chevrolet Co., Inc., by its cross-petition seeks to vacate and set aside the said order, or " for leave to adduce additional evidence, and * * * for an order * * * modifying, vacating, annulling and setting aside the order of the Board * * *."

The Labor Board's order, in substance, directs the respondent to cease and desist from (a) refusing to bargain collectively with the union, (b) discouraging membership in the union by refusing to reinstate its employees, with certain exceptions, and (c) requiring its employees, as a condition of employment, to refrain from joining or assisting the union, and engaging in other activities which interfere with, restrain, and coerce its employees in the exercise of their rights under section 703 of the Labor Law.

In addition to the cease and desist provisions, the order directs the respondent to take the following affirmative action: (a) Upon

request to bargain collectively with the union as the exclusive representative of the employees; (b) to the extent that work is available and is now being performed by persons not employed by the respondent on May 4, 1938, but hired since, to offer all the employees employed during the week prior to May 4, 1938, and who went on strike that day (except three named employees) immediate employment in positions equivalent to those which they previously held, dismissing, if necessary, those hired on or after May 4, 1938, the remaining employees to whom employment is not now available to be placed on a preferential list and to be offered employment when additional labor is needed; (c) to pay to these employees who on or about July 13, 1938, applied for reinstatement and to whom reinstatement was refused, the wages they lost from the date of such refusal of reinstatement less moneys earned by them in other employment thereafter; (d) to pay to two named employees a sum equal to that which they would have earned from the date of respondent's refusal to reinstate them to the date on which each obtained the employment at which they were working at the time of the hearing; (e) to pay to those employees whose reinstatement is ordered and who have not previously applied for reinstatement and who upon application for reinstatement are not reinstated by the respondent in accordance with the terms of the order, a sum of money equal to that which each of them would normally have earned from the date of such refusal of their application to the date of reinstatement; (f) to post cease and desist notices in respondent's premises in places where the employees assemble, and (g) to notify the Board of the steps taken to comply with the aforesaid order.

Respondent has gone far afield in attacking the processes and administration of the New York State Labor Relations Board, and it is difficult to perceive how the injection of matter of this character can aid the court in the disposition of the manifold aspects of the problem presented for determination. This is particularly so in the instant case because there is no basis in the record justifying the statements set forth in the cross-petition. Attacks of this character in proceedings to review are not only ineffective and confusing, but render the task of the court more onerous.

As counsel well knows, the courts have no power to *weigh* the evidence. The statute itself so provides when it says in subdivision 2 of section 707 thereof: " The findings of the Board as to the facts, if supported by evidence, shall be conclusive."

If there is any substantial evidence to support the Board's findings, the courts are without power to set them aside. ( *National Labor Relations Board* v. *Waterman S. S. Corp.*, 309 U. S. 206;

*Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256.) As said (p. 274) in the last cited case:

" Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative board.

" \* \* \* The Board must consider and sift all the evidence — accepting the true and rejecting the false — and must base inferences on what it has accepted as true. *Choice lies with the Board and its finding is supported by the evidence and is conclusive where others might reasonably make the same choice.*" (Italics supplied.)

In short, on disputed facts the court has no power to substitute its judgment for that of the Board.

According to the cross-petition " the entire order of the Board really rests " upon the determination of " the appropriate collective bargaining unit, which is as it were, the cornerstone of the Board's order. If, therefore, the Board was not justified in this respect, then its entire order must be vacated, annulled and set aside." It is also urged (1) that the uncontradicted evidence shows that, as a matter of law, the respondent bargained collectively until an impasse was reached, and (2) that it was denied due process of law and had an unfair trial before a biased and prejudiced trial examiner.

Notwithstanding its claim that it bargained collectively with the union according to the requirements of the act, respondent urges that it was under no duty to do so until the Board had *first* determined (1) what constituted an appropriate bargaining unit, (2) had found that the union had a majority within that unit, and (3) had certified these matters to the employer; that inasmuch as it was not until December 11, 1940, that the Board first decided what unit was appropriate, respondent was not until then under a duty to bargain collectively and, therefore, as a matter of law, cannot be held to have failed and refused to do so in 1937 or 1938.

The act itself, however, provides otherwise, for subdivision 3 of section 705 states that in an investigation to ascertain the appropriate bargaining unit and the majority representative therein " the Board shall provide for an appropriate hearing upon due notice, either *in conjunction* with a proceeding under section seven hundred six or otherwise." (Italics supplied.) In the case at bar the hearing in connection with the representation proceeding was held in conjunction with the hearing relative to the unfair labor practices. Under the act, this procedure cannot be the basis for refusing to enforce the Board's order.

As said in *National Labor Relations Board* v. *Dahlstrom Metallic Door Co.* (112 F. [2d] 756, 757): " The contention that bargaining

was not mandatory until the Board had accredited Local No. 307 as bargaining agent is frivolous."

See, also, *Art Metals Construction Co.* v. *National Labor Relations Board* (110 F. [2d] 148) where it was said (p. 150): " The employer took the risk of refusal [to bargain collectively], if the claim turned out to be well founded. *National Labor Relations Board* v. *Remington-Rand, Inc.*, 2 Cir., 94 F. 2d 862, 868."

Respondent, moreover, argues that the appropriateness of the unit was questioned and disputed and that the union itself in the first two of its three petitions filed with the Board never sought a unit confined to respondent's shop employees. This claim is not borne out by the documents in question. The first petition specifically limited the employees affected to ten, when at all times respondent employed a total of approximately twenty employees of all kinds. The second petition was specifically restricted to all shop employees for it is there stated: " Local 259, International Union, United Automobile Workers of America, requests to be certified as the exclusive collective bargaining agency for all shop employees of Roosevelt Chevrolet Co., Inc." The third petition was still more specific, for it limited the unit to " mechanics, greasers, helpers, porters, painters, body men, parts men, and all maintenance men, exclusive of salesmen, clerical help and supervisory employees."

There is no question then that the respondent at all times knew that the unit sought by the union was limited to its shop employees. The union did not accept into membership salesmen, clerical help and supervisory employees and when respondent refused to consent to an election by secret ballot among its employees, it did not raise any question as to the bargaining unit.

Much of the argument of respondent in opposition to the enforcement of the Board's order deals with the alleged denial to it of due process of law. Counsel has diligently presented in detail his claims in that respect, but an examination of the record and the decided cases fails to support his contentions. The most serious charge is the alleged prejudice of the trial examiner. It is claimed that because, before coming to the Board, he had been counsel to a C. I. O. union and " did not ever claim to have represented any A. F. of L. unions or employers," he should not have been permitted to sit as the trial examiner in the instant case involving a C. I. O. union. This objection was urged by the respondent at the hearing of June 28, 1939, following a ruling as to the admissibility of certain documents with which respondent's counsel disagreed. The trial examiner specifically asked of counsel: " Or do you desire that I

withdraw and that a new trial examiner be appointed to take over from now on." Counsel answered in the affirmative, and stated: " Frankly I would feel more comfortable if we had some trial examiner who had no C. I. O. background." The trial examiner offered to withdraw from the case. Thereafter, the proceeding was interrupted to have the ruling objected to by counsel reviewed by the full Board. Upon such review, the Board reversed the trial examiner's ruling and immediately thereafter the following occurred:

" Trial Examiner: Have you come to any conclusion, Mr. Sanborn, with respect to your request for the substitution of a new Trial Examiner? Mr. Sanborn: No, I suggest that we recess for lunch, and over the luncheon recess I will come to a conclusion as to what I wish to do."

When the hearing was resumed, counsel for the respondent of his own volition withdrew his request for another trial examiner.

" Trial Examiner: Mr. Sanborn, at the close of the oral argument before the Board, you indicated that you would consider the matter over the luncheon recess as to whether you had decided or would decide that you wanted another Trial Examiner to substitute in my place and stead, to continue with this hearing. Have you come to a conclusion? Mr. Sanborn: Yes, I think in view of the decision of the Board on those two documents, I will withdraw my request that another Trial Examiner be substituted. Trial Examiner: All right, gentlemen, with the statement of Mr. Sanborn, we will continue."

It is thus clear that objection to the trial examiner was never urged before the Board although opportunity to do so was afforded and that in effect respondent waived any objection to the trial examiner by withdrawing the request that another be substituted. There are a few other specific objections raised by the respondent in respect to the trial examiner's conduct, such as his examination of witnesses, referring matters to the Board in the course of the hearing, permitting the union attorney to participate in the proceedings, etc., all of which, upon examination, are without merit. (See *Subin* v. *National Labor Relations Board*, 112 F. [2d] 326, 332; certiorari denied, 311 U. S. 673; *Ritzwoller Co.* v. *National Labor Relations Board*, 114 F. [2d] 432; *Consumers Power Company* v. *National Labor Relations Board*, 113 id. 38; 8 Wigmore on Evidence [3d ed.], § 2200.)

It is the contention of the respondent that there is no substantial evidence in the record to support the Board's finding of failure to bargain, and its guilt in respect to other unfair labor practices. It is admitted, however, that a written signed contract was refused; that, instead, respondent offered an oral agreement for one year

less a day. In that connection, counsel for the respondent gave the following testimony at the hearing of July 6, 1939: "A. I think the next thing that I said was the respondent would not enter into any signed agreement with the union. I think it was Racolin who responded to that and we had somewhat of a technical legal discussion between Racolin and myself on that point. Racolin, I think, said there had to be a signed agreement. It is my recollection that I referred to the Jones and Laughlin decisions or one of that series of decisions by the Supreme Court of the United States on the National Act, 29 U. S. C. A. § 151 *et seq.*, and I said that under the National Act which was similar to the State Act, the Supreme Court had held, in my opinion, that there did not have to be any agreement at all and certainly not a signed agreement. Q. Was there any discussion in the way of an oral agreement? A. Yes, I pointed out to Racolin that an oral agreement could be entered into, and that we were prepared to do so, and Racolin, I think, it was, said that — it might have been Fischer, but I think it was Racolin — said that there would be possibilities of uncertainty in disputes if there was merely an oral agreement and that there would be no way of determining just what agreement had been arrived at. I said that was very simple; that when we reached an agreement we would prepare two memoranda — they would make a memorandum and we would make a memorandum of the specific facts and matters that had been agreed on and we would compare those two memoranda right then and there and make sure that they were both the same, the employer would retain his memorandum, the union would retain its memorandum, and there could be no possibility of dispute. The two memoranda being identical. I said also that an oral agreement was just as binding as a written one provided it was one day less than a full year. The Statute of course would not prohibit it, so an oral agreement would be just as good as the written agreement."

The National Labor Relations Board, as well as all Circuit Courts of Appeals who have passed upon the question, with the exception of the Seventh Circuit, " have held that the obligation to bargain includes the duty to reduce to a writing signed by the parties, the terms and conditions agreed upon as constituting the collective bargaining agreement reached as the result of negotiations." (2 Teller on Labor Disputes and Collective Bargaining, § 331, pp. 890, 891; *Art Metals Construction Co.* v. *National Labor Relations Board,* 110 F. [2d] 148; *National Labor Relations Board* v. *Highland Park Mfg. Co.,* Id. 632; *National Labor Relations Board* v. *Sunshine Mining Co.,* Id. 780; *Continental Oil Co.* v. *National Labor Relations Board,* 113 id. 473; certiorari granted limited to other points

October 28, 1940, 311 U. S. 637. See, also, 313 id. 212; *Bethlehem Shipbuilding Corp.* v. *National Labor Relations Board*, 114 F. [2d] 930.) Finally, the Supreme Court of the United States passed upon the question in *Heinz Co.* v. *National Labor Relations Board* (311 U. S. 514, 526) and said:

" A business man who entered into negotiations with another for an agreement having numerous provisions, with the reservation that he would not reduce it to writing or sign it, could hardly be thought to have bargained in good faith. This is even more so in the case of an employer who, by his refusal to honor, with his signature, the agreement which he has made with a labor organization, discredits the organization, impairs the bargaining process, and tends to frustrate the aim of the statute to secure industrial peace through collective bargaining.

" *Petitioner's refusal to sign was a refusal to bargain collectively and an unfair labor practice.*" (Italics supplied.)

Thus, respondent's refusal to enter into a signed written contract in and by itself constitutes an unfair labor practice. The Board, however, did not rest its findings solely upon this ground. It found also that as a result of respondent's refusal to bargain, and other unfair practices, the employees went out on strike on May 4, 1938, and that during the said strike it continued to refuse to bargain collectively with the union and by written and verbal communications sought to induce employees to abandon the union and return to work; that it discriminated in regard to hire and tenure of the employment of certain strikers by refusing to reinstate them; and by these and other acts interfered with, restrained and coerced its employees.

These findings, respondent urges, have no substantial evidence to support them and were made after consideration of " only a portion of the direct testimony of the Board's own witnesses and which gave no consideration or effect to other direct testimony of the Board's own witnesses, and which omitted all consideration of the important facts which were extracted from such witnesses upon their cross-examination." But the choice of conflicting evidence was the Board's. As said in *Matter of Stork Restaurant, Inc.*, v. *Boland* (*supra*, 267): " Where there is conflict in the testimony produced before the Board, where reasonable men might differ as to whether the testimony of one witness should be accepted or the testimony of another witness be rejected, where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board. The courts may not weigh the evidence or reject

the choice made by the Board where the evidence is conflicting and room for choice exists."

Having no power to weigh the evidence, no useful purpose can be served in outlining here the testimony, transcribed upon 1,296 pages of minutes, and discussing the numerous other propositions of law advanced by the respondent. These, upon examination, are found without substance in view of the decided cases. A careful consideration of the record as a whole establishes that the findings of the Board are supported by evidence " so substantial that from it an inference of the existence of the fact found may be drawn reasonably." (*Matter of Stork Restaurant, Inc.*, v. *Boland, supra,* 273.)

Both in its brief and in the oral argument, it has been contended by the respondent that so onerous are the " back pay " provisions of the order sought to be enforced, that its business may be jeopardized thereby. The general counsel for the Board vigorously disputed this claim and pointed out that the amount involved would prove to be unsubstantial. This is borne out to a large extent by the Board's order itself. Only six employees applied for reinstatement on July 13, 1938. One was reinstated and five were not. Of the latter, two secured substantially equivalent employment. Consequently only three men remain who may be entitled to back pay. In calculating such back pay, the Board has specifically provided for the *deduction* therefrom of all earnings received by these three workers elsewhere. Quite probably, in subsequent compliance proceedings, it will appear that these earnings have not been unsubstantial. In any event, the respondent's apprehension appears to be unjustified.

The Board's petition for an order of enforcement is accordingly granted, and the cross-petition of the respondent, Roosevelt Chevrolet Co., Inc., in all respects denied.